UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

DAVID FRED MINIER,

          Plaintiff,                 Case No. 1:25-cv-777

v.                                            Honorable Paul L. Maloney

UNKNOWN BOBAY et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below.

**Discussion**

**I.    Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Gus Harrison Correctional Facility in Adrian, Lenawee County, Michigan. The events about

which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. Plaintiff sues the MDOC, LCF Warden Bryan Morrison, and LCF Prison Counselor Unknown Bobay.[1] (Compl., ECF No. 1, PageID.2.)

In Plaintiff's complaint, he alleges that on February 14, 2024, he "approached [a non-party] housing unit officer . . . and requested a work order for the shower floor" because "the paint was peeling up and what appeared to be black mold was growing."[2] (*Id.*, PageID.3.)[3] On February 28, 2024, Plaintiff spoke with Defendant Bobay "to follow up about the shower." (*Id.*) Plaintiff then spoke to non-party Acting Deputy Warden Cline about the matter on March 13, 2024. (*Id.*, PageID.3–4.) The matter remained unresolved, so Plaintiff "filed a grievance to compel prison officials to act on these unsanitary conditions." (*Id.*, PageID.4.)

Subsequently, on March 29, 2024, a non-party "health inspector was doing his annual inspection of [Plaintiff's] housing unit," and "the health inspector was accompanied by [Defendant] Bobay." (*Id.*) Plaintiff "requested and spoke to [the] health inspector about the shower issue," and "the health inspector agreed to take a look." (*Id.*)

"Approximately two to four hours after [Plaintiff] spoke to the health inspector, [Defendant] Bobay[, a prison counselor,] conducted a shakedown on [Plaintiff's] cube." (*Id.*) Plaintiff alleges that prison counselors "are not allowed to conduct a shakedown of a cell without an officer present," and that "this task is normally done by a housing unit officer." (*Id.*) Plaintiff

---

[1] Plaintiff states that he sues Defendants MDOC and Bobay in their official capacities, and Plaintiff does not indicate in which capacity he sues Defendant Morrison. (*See* Compl., ECF No. 1, PageID.2.) In this action, Plaintiff seeks monetary damages only. (*Id.*, PageID.7.) Under these circumstances, the Court construes *pro se* Plaintiff's complaint to raise claims against Defendants Bobay and Morrison in their individual capacities.

[2] In the complaint, Plaintiff states that "the unsanitary living conditions [themselves] are not a[n] issue in this complaint." (Compl., ECF No. 1, PageID.1.)

[3] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

2

concedes that "it may be true that [Defendant] Bobay found items during the shakedown that could be classified as contraband"; however, Plaintiff claims that Defendant Bobay "identified a myriad of items that are not contraband" as contraband. (*Id.*, PageID.4–5 (listing items that Plaintiff believes are not contraband).) A misconduct report was issued for the alleged contraband, and Plaintiff claims that "none of the[] items identified in the misconduct report are contraband."[4] (*Id.*, PageID.5.) Plaintiff alleges that as a result of the misconduct, he "lost valuable personal items" and "lost his honor unit housing status." (*Id.*, PageID.6.) Plaintiff also alleges that he "was treated with disparate treatment because he was attempting to compel prison officials to address unsanitary living conditions." (*Id.*, PageID.6–7.)

Plaintiff states that "the shower issue was finally addressed on or around June 10, 2024." (*Id.*, PageID.6.)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his First Amendment right to be free from retaliation. (*See id.*, PageID.1, 6.) Additionally, the Court construes Plaintiff's complaint to raise Fourteenth Amendment procedural due process and equal protection claims. As relief, Plaintiff seeks monetary damages. (*Id.*, PageID.7.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

---

[4] In the complaint, when discussing the misconduct report at issue, Plaintiff states: "see Exhibit I." (Compl., ECF No. 1, PageID.5.) The Court notes that when Plaintiff filed his complaint with the Court, no exhibits were submitted with the complaint.

3

elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.     **Defendant MDOC**

Plaintiff names the MDOC as a Defendant. (Compl., ECF No. 1, PageID.1, 2.) As an initial matter, Plaintiff does not name Defendant MDOC in the body of his complaint. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff

failed to allege how any named defendant was involved in the violation of his rights). And, Defendant MDOC is subject to dismissal for this reason alone.

Moreover, § 1983 expressly requires that a named defendant be a "person." *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). However, the State of Michigan (acting through the MDOC) is not a "person" within the meaning of § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding a state is not a "person"); *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will* and holding that the MDOC is not a "person.").

Accordingly, for these reasons, Plaintiff fails to state any claim against Defendant MDOC upon which relief may be granted.

### B.  Defendant Morrison

Plaintiff lists Defendant Morrison, the warden at LCF, as a Defendant in this action; however, Plaintiff fails to allege any facts showing how Defendant Morrison was personally involved in the violation of his constitutional rights. (*See generally* Compl., ECF No. 1.)

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore*, 92 F. App'x at 190; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

Here, Plaintiff does not name Defendant Morrison in the body of his complaint. (*See generally* Compl., ECF No. 1.) And, Plaintiff's claims against Defendant Morrison fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are

subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Moreover, to the extent that Plaintiff seeks to hold Defendant Morrison liable due to his supervisory position, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit has repeatedly summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Morrison encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct.

Accordingly, for these reasons, all of Plaintiff's claims against Defendant Morrison will be dismissed for failure to state a claim.

### C. Defendant Bobay

#### 1. First Amendment Retaliation Claim

Plaintiff alleges that Defendant Bobay retaliated against him on March 29, 2024, because Plaintiff had complained to the non-party health inspector "about the shower issue," which Plaintiff describes as "the paint was peeling up and what appeared to be black mold was growing." (*See* Compl., ECF No. 1, PageID.4–6.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) the plaintiff was engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, Plaintiff alleges that on March 29, 2024, a non-party "health inspector was doing his annual inspection of [Plaintiff's] housing unit," and "the health inspector was accompanied by [Defendant] Bobay." (Compl., ECF No. 1, PageID.4.) Plaintiff told the health inspector "about the shower issue," and "the health inspector agreed to take a look." (*Id.*) "Approximately two to four

7

hours after [Plaintiff] spoke to the health inspector, [Defendant] Bobay[, a prison counselor,] conducted a shakedown on [Plaintiff's] cube" and confiscated a number of Plaintiff's belongings, asserting that they were contraband. (*Id.*) Plaintiff alleges that prison counselors "are not allowed to conduct a shakedown of a cell without an officer present." (*Id.*) A misconduct report was issued for the alleged contraband, and Plaintiff claims that "none of the[] items identified in the misconduct report are contraband." (*Id.*, PageID.5.)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Under these circumstances, although Plaintiff has by no means proven his First Amendment retaliation claim, the Court will not dismiss Plaintiff's retaliation claim against Defendant Bobay at this time. *See, e.g.*, *Mustin v. Wainwright*, No. 23-3671, 2024 WL 3950810, at *9 (6th Cir. Aug. 27, 2024) (discussing that although "temporal proximity alone may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" (quoting *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004)), the Sixth Circuit "typically avoid[s] sole reliance on temporal proximity," and in applying this standard to Mustin's case, concluding that, among other allegations, "Mustin's allegations that the grounds for the misconduct report were contrived, and the 'suspicious temporal proximity' between his complaint and the false report, [we]re sufficient to plausibly establish a retaliatory motivation" (citing *Maben v. Thelen*, 887 F.3d 252, 268 (6th Cir. 2018))).

### 2.  Fourteenth Amendment Procedural Due Process Claims

#### a.  Issuance of Misconduct Report

The Court construes Plaintiff's complaint to raise a Fourteenth Amendment procedural due process claim regarding the issuance of the contraband-related misconduct charge and Plaintiff's loss of "his honor unit housing status" as a result of the misconduct. (*See* Compl., ECF No. 1, PageID.5–6.)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff states that he received a contraband-related misconduct ticket, and although not specifically articulated by Plaintiff, Plaintiff's allegations suggest that he was convicted of this

9

misconduct charge. (*See* Compl., ECF No. 1, PageID.5–6.) Plaintiff does not indicate what sanctions, if any, he received as a result of the misconduct conviction. However, Plaintiff states that he "lost his honor unit housing status" as a result of the misconduct. (*Id.*, PageID.6.)

With respect to Plaintiff's loss of "his honor unit housing status," the United States Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976).

Furthermore, because Plaintiff does not indicate what sanctions, if any, he received as a result of the misconduct conviction, Plaintiff necessarily fails to show that any sanction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. And, regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80

10

F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Accordingly, for these reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding his receipt of the contraband-related misconduct ticket and his loss of his "honor unit housing status."

### b. Deprivation of Personal Property

Plaintiff alleges that as a result of the contraband-related misconduct, he "lost valuable personal items." (Compl., ECF No. 1, PageID.6.) To the extent Plaintiff intended to raise a procedural due process claim regarding the deprivation of Plaintiff's property, as explained below, this claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of

11

property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### 3.    Fourteenth Amendment Equal Protection Claim

In Plaintiff's complaint, without providing any further explanation, he claims that he "was treated with disparate treatment because he was attempting to compel prison officials to address unsanitary living conditions." (Compl., ECF No. 1, PageID.6–7.) Plaintiff also alleges that "this disparate treatment was the direct result of intentional and purposeful discrimination by [Defendant] Bobay." (*Id.*, PageID.7.) The Court construes these allegations to raise a Fourteenth Amendment equal protection claim.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*,

12

801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, although Plaintiff uses the phrases "disparate treatment" and "purposeful discrimination," he fails to allege any *facts* to support his conclusory assertions. Indeed, Plaintiff fails to allege any facts to suggest that he was treated differently than others who were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendants MDOC and Morrison will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, Plaintiff's Fourteenth Amendment procedural due process and equal protection claims against remaining Defendant Bobay. Plaintiff's First Amendment retaliation claim against Defendant Bobay remains in the case.

An order consistent with this opinion will be entered.

Dated:   August 26, 2025                         /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge